IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK R. ROMZEK,

                              Plaintiff,

    v.                                                                      OPINION and ORDER

BALDWIN AREA MEDICAL CENTER, INC,                              23-cv-27-amb

                              Defendant.

---

Defendant Baldwin Area Medical Center adopted a policy that required all employees to vaccinate against Covid-19 or receive an exemption. Plaintiff Dr. Mark Romzek objected to the vaccine on religious grounds and applied for an exemption. Baldwin reviewed Romzek's application and offered him an accommodation: If he refused to vaccinate, he needed to follow an alternative protocol by testing twice weekly, masking in Baldwin facilities, and eating meals in isolation.[1] Romzek refused the accommodation, and Baldwin terminated him for failing to comply with policy. Romzek sued, claiming Baldwin failed to reasonably accommodate his religious objections in violation of Title VII of the Civil Rights Act of 1964. Romzek also claims age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) because he believes he was replaced with a younger surgeon. Finally, Romzek claims that Baldwin breached his employment agreement in violation of Wisconsin state law by failing to adequately compensate him under the contract. Baldwin filed for summary judgment on all claims. Dkt. 31. For the following reasons, the court GRANTS the motion.

---

[1] In addition, Baldwin initially considered requiring exempted employees to disclose their vaccination status when asked and on patient consent forms. *See* Dkt. 33-3. As discussed further below, there is no evidence that this protocol was ultimately required or ever enforced.

JURISDICTION

The parties have consented to jurisdiction by a United States Magistrate Judge. Dkt. 53. The court has original jurisdiction over Romzek's constitutional and statutory claims because they arise under federal law, 28 U.S.C. § 1331, and supplemental jurisdiction over his related state-law breach-of-contract claim, 28 U.S.C. § 1367.

UNDISPUTED FACTS[2]

A. The parties

Romzek is an orthopedic surgeon and devout Lutheran who was 55 years old when he filed this lawsuit. Baldwin Medical Center is an independently owned and operated non-profit healthcare organization that does business as Western Wisconsin Health and serves patients in the Baldwin, Wisconsin area. Dkt. 49, ¶ 5. Alison Page, Baldwin's then-Chief Executive Officer, hired Romzek in 2013 to provide orthopedic surgical procedures. Romzek signed an employment agreement with Baldwin in May 2013 and began working there two months later.

---

[2] Based upon the parties' proposed factual findings and responses, and considering the evidence of record in the light most favorable to Romzek as the non-moving party, the following facts are material and undisputed, unless otherwise noted. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Romzek purports to dispute most of Baldwin's proposed findings of fact. But his responses are largely immaterial, argumentative, and unsupported, and the court has disregarded many of them for these reasons. *See, e.g.*, Dkt. 49, ¶¶ 18, 19, 24, 36, 39, 53, 54, 70, 73, 86 (immaterial), ¶¶ 21, 66, 70, 72 (argumentative), ¶ 85 (restates the PFOF), & ¶¶ 37, 59, 60, 78 (unsupported). Baldwin argues that Romzek's responses are made in bad faith and requests its attorney's fees for the time it took to craft its reply. While the court generally agrees with Baldwin's position, it will not award attorney's fees as a sanction because the request should have been presented as a separate motion to allow briefing, not tucked into a reply without an opportunity for Romzek to respond. *See* Fed. R. Civ. P. 11(c) (sanctions must be requested separately). For purposes of resolving the present motion, the fairest and most appropriate approach is simply to disregard Romzek's improper responses.

**B.  Romzek's employment agreement**

Under Romzek's employment agreement, Romzek was required to comply with "all policies, procedures, directives and orders of" Baldwin.  Dkt. 34-1, ¶ 1.6.14.  The agreement states that Baldwin may suspend Romzek for "failure to abide by [Baldwin's] policies or procedures, Medical Staff Bylaws, Rules or Regulations."  *Id.*, ¶ 6.1.  Section 4.2 of the agreement provides for different termination scenarios.  Section 4.2.2 addresses termination for material breach.  Specifically, if one party breaches the agreement, "the non-breaching party may provide written notice of the breach and terminate this Agreement at any time after the breaching party has a reasonable opportunity to cure the breach, not to exceed ten (10) days."  *Id.*, ¶ 4.2.2.  Section 4.2.4 addresses termination for any reason.  Specifically, under section 4.2.4, either party may terminate the agreement immediately for any reason with 180 days' prior written notice, so long as Baldwin paid Romzek "a pro-rated portion of his Base Salary for the remaining notice period."  *Id.*, ¶ 4.2.4.

**C.  Baldwin's talks with another surgeon**

During the eight years Romzek worked at Baldwin, he performed a variety of surgical procedures including total knee replacements, shoulder scopes, knee scopes, carpal tunnel releases, trigger finger releases, open reduction and internal fixation of fractures, and partial hip replacements.  Patients who needed procedures Romzek did not perform were sent elsewhere.  This prompted Baldwin to consider hiring "another orthopedic surgeon" to supplement the services Romzek provided.  Dkt. 49, ¶ 19.  Romzek acknowledges that he participated in discussions about "bringing someone in to do the cases that [he] didn't do." Dkt. 26 at 152:20-22.

Romzek admits he never heard anyone at Baldwin make any statements about his age or see any documents referring to his age.  But he notes that "around the time [he] was being told to take the [Covid-19] vaccine or be terminated," "a nameplate" appeared near his workspace.  *Id.* at 152:20-153:7.  He "took that as somewhat harassment and that they were trying to push [him] out to bring someone younger in." *Id.* at 153:17-20.  Romzek eventually "heard through the grapevine" that Baldwin hired someone "in his 30s." *Id.* at 155:1-2.

**D. Baldwin's Covid-19 vaccination policy**

Also in the summer of 2021, Baldwin was monitoring developments in the Covid-19 pandemic.  At that time, St. Croix County "and the region" where Baldwin is located was "at an extremely high level of incidence" of infection.  Dkt. 45 at 61:12-21.

Baldwin already had a vaccination policy that required its employees to vaccinate against certain diseases, such as influenza.  Baldwin wanted to protect staff and patients from Covid-19 as well.  So, in August 2021, Baldwin updated that existing policy to require all employees to vaccinate against Covid-19 by October 1, 2021.  This update was based on recommendations from the Center for Disease Control (CDC) and the Wisconsin Department of Health Services, among other available information.  Page informed staff of the new requirement via email, which included a copy of the updated policy and forms to request a medical or religious exemption.  Dkt. 32-10.

In updating its vaccination policy, Baldwin developed a process for accommodating employees who requested medical or religious exemptions to the Covid-19 vaccines.  Baldwin created a committee to review and evaluate these requests.  The committee members included Page, employment law attorney Carol Skinner, Baldwin's Director of Infection Prevention and Risk Management Sharon Bergsholm, and at least one physician, including Dr. Kathleen

Findlay.  In reviewing employee exemption requests, the committee considered whether a request could be accommodated based on the employee's position, job duties, and willingness to comply with the following alternative safety protocols, which were drafted upon review of existing governmental guidelines:

1.  Twice weekly nasal swab testing for full-time employees;[3]

2.  Consistent use of approved PPE at all times while in Baldwin's facility;[4]

3.  Eating in isolation in a designated space rather than in common areas;

4.  Not reporting to work with any Covid-19 symptoms; and

5.  Responding truthfully to any patient or employee who asks if the employee is vaccinated.[5]

The committee received 33 exemption requests and evaluated each one based on whether accommodation was feasible in light of the requestor's role at Baldwin.[6]  As part of the process, committee members Bergsholm and Findlay spoke individually with approximately 30

---

[3] Bergsholm attests that requiring a second test for employees working at least a .6 FTE "allowed us to pick up on what could have been a false negative earlier in the week" and avoid the "risk of having an individual in the building who only tested once a week [be] potentially positive [and] be there all week and expose patients."  Dkt. 45 at 58:18-59:2.  Bergsholm further attests that at the time, the county and region were "at an extremely high level of incidence" of infection and that the CDC was recommending that "a specific organization had to take into consideration their population they serve as well as the incidence of Covid in the county and the region" in determining testing requirements.  *Id.* at 61:12-21.

[4] Bergsholm attests that staff was already required to wear N-95 personal protective equipment while in the facility.  Dkt. 32-4, ¶ 12.

[5] As explained below, this protocol was ultimately not required or enforced.

[6] Not all requests for accommodation were granted.  Human Resources Director Erin Benson attests that the employment of three nurse midwives and two registered nurses was terminated because they declined to vaccinate, and their exemption requests could not be accommodated due to their prolonged contact with vulnerable patient populations.  Dkt. 32-3, ¶¶ 7-8.

employees who submitted requests to learn more about the requirements of their positions and to assess their willingness to comply with the alternative safety protocol. Bergsholm discussed the protocol with each individual over the phone first because "how the accommodations would be implemented . . . [for a given requestor] might have changed based on information we acquired during the interviews." Dkt. 45 at 78:4-7. To this end, Bergsholm used a questionnaire during these interviews and attests that all employees were asked the same questions. *Id.* at 74:20-75:2; 78:12-18. The questions concerned an employee's ability to work remotely, what steps the employee was taking to ensure patient and coworker safety, and how long the employee was typically within six feet of another individual. Dkt. 45-4.

### E. Romzek's request for exemption

Romzek signed and submitted his exemption request on September 7, 2021. Dkt. 32-9 at 4. Romzek explained on the form that he could not receive the Covid-19 vaccine without violating his religious belief that "all life is scared" because the vaccine was developed from "aborted fetal tissue." Dkt. 45-3 at 2, 4. Romzek also explained he believed Baldwin's vaccination policy was based on an "irrational fear" of the virus, which conflicted with his trust in God. *Id.* In submitting the form, Romzek acknowledged that, if his request was granted, he "must comply with any and all alternative infection control requirements imposed as a condition of exemption and [he would be] subject to discipline, up to and including termination, for failing to comply." *Id.* at 1.

As with other applicants, Bergsholm sought to interview Romzek about his exemption request. Romzek asked to prepare written responses ahead of time, but the committee denied his request due to time constraints. Dkt. 45 at 74:6-10; 80:7-20. Bergsholm recalls that when she spoke with Romzek on September 20, 2021, he expressed hostility towards compliance

6

with the alternative safety protocols. *Id.* at 102:7-21.  Romzek admitted at his deposition that he did not believe the protocols were reasonable, and that he may have asked Bergsholm if she was "joking" and "Is this North Korea?"  Dkt. 27 at 249:7-20.  Bergsholm attests that Romzek's "attitude and demeanor" contrasted "with the majority of the other employee interviews we had conducted . . . [in which] the employees assured us that they were more than willing to do whatever was being asked to preserve patient and coworker safety and readily agreed to the protocols we discussed."  Dkt. 32-4, ¶ 13.  Based in part on his position as a surgeon, Baldwin determined Romzek's degree of risk if allowed to work without vaccination "high."  *Id.*, ¶ 15.

The next day, Romzek sent committee member Skinner an email asking for a written copy of the alternative protocols he had discussed with Bergsholm.  Dkt. 33-2.  On September 23, 2021, Skinner's office provided a copy that listed five protocols, including the requirement that exempted employees respond truthfully when asked about their vaccination status and noting that "[p]atient consent forms, when necessary, will also provide this information."  Dkt. 33-1.  That same day, Bergsholm sent an email regarding the testing requirements for exempted employees.  Bergsholm clarified that Baldwin would require employees who worked more than half-time to test two times per week anytime during their scheduled shifts, and ideally "spread out throughout their scheduled work."  Dkt. 45-4 at 1.  Romzek emailed Bergsholm to ask if Baldwin would reduce the twice-weekly testing requirement to once-weekly in his case because he was in the building only four days a week.  Dkt. 32-13.  Bergsholm responded that he would still need to test twice a week as an employee who worked more than half time.[7]

---

[7] As discussed above, this is an example where Romzek's response to one of Baldwin's proposed findings of fact is unsupported and outright false.  Baldwin's proposed finding of fact no. 59 states that Baldwin considered Romzek's request to test once a week and cites Bergsholm's affidavit in support.  Romzek asks the court to disregard Bergsholm's affidavit on the matter

**F. Baldwin's offered accommodation**

On September 29, 2021, the committee granted Romzek's exemption request contingent upon his compliance with the alternative safety protocols.  Dkt. 33-3 at 1.  As Skinner attests, "the exemption committee took Dr. Romzek's religious beliefs a[s] true, and ultimately determined his position was one that could be accommodated."  Dkt. 33 at 3.  However, Skinner knew that Romzek had shown hostility to compliance with the alternative protocols when he spoke with Bergsholm.  So that same day, Skinner called him and left a voicemail, and she also sent him an email asking whether he intended to comply.

When Skinner sent this email, she attached an accommodation letter that outlined the same five protocols discussed in Romzek's September 20 interview and sent to him on September 23.  Dkt. 27 at 269:18-21.  But Skinner noted in her email that the fifth protocol requiring disclosure of vaccination status was under review, explaining that "we are in a bit of uncharted waters here, and are reviewing the 5th protocol, so at this time, the first four would be required, while we consider the 5th more carefully."  Dkt. 33-2.  The exemption committee formally decided not to enforce the fifth protocol that same day, on September 29, 2021, and exempted employees were not required to comply with it when the Covid-19 vaccination policy took effect on October 1, 2021.

---

because "she admitted during her deposition that it was tampered with after she signed the Affidavit in front of the notary."  Dkt. 49, ¶ 59.  Bergsholm admitted nothing of the sort. Rather, she recalled being asked additional questions about the affidavit, but attested that she was "not aware that anything was changed or added" to her affidavit after it was notarized, that she had no reason to think that any of the paragraphs in the affidavit were not there when the document was notarized, and that she would sign the affidavit that day as true and correct to the best of her knowledge.  Dkt. 45 at 97:22-24; 98:5-23; 163:21-164:9.  The court disregards Romzek's blatant mischaracterization of Bergsholm's deposition testimony and accepts Baldwin's proposed fact no. 59 as undisputed.

Romzek was asked to sign and return the letter, but he did not.  Although he did not object to the fourth protocol requiring employees with Covid symptoms to stay home, he objected to the other four because, as he testified at his deposition, he "didn't think that they were reasonable."  Dkt. 27 at 267:12-13.  He objected to twice weekly testing because he believed other unspecified "places were requiring weekly testing and not twice weekly" and once-a-week testing was the "norm."  *Id.* at 253:13-255:3; 289:8-9.  He objected to always wearing a mask while indoors at Baldwin because he believed the requirement was "unnecessary" while alone in a room and "potentially harmful" because, according to Romzek, uninterrupted masking "poses physiological risks to the wearer" such as an increased risk of developing bacterial pneumonia.  *Id.* at 277:8-278:12; 291:20-25; 292:8-14.  Romzek also objected to eating separately because the requirement was "meant to stigmatize and punish" and would force him to eat in his car when it was cold outside.[8]  *Id.* at 278:13-280:13; 293:1-8.  Finally, he objected to the requirement that he disclose his vaccination status upon request as violative of his healthcare privacy rights.  *Id.* at 281:3-7; 295:12-14.

Romzek provided a religious objection to getting vaccinated, but Romzek did not inform Baldwin of any religious objections to the protocols because he "thought it was sufficient that they were unreasonable and punitive."  *Id.* at 303:13-304:6.

## G. Romzek's termination

Baldwin determined that Romzek had violated the vaccination policy and was thus in breach of his employment agreement.  Page sent Romzek a letter on September 30, 2021

---

[8] Bergsholm attests in response that there were "numerous options" for exempted employees to eat in isolation including "several negative airflow rooms in the facility, on the [facility's] outdoor patio or their vehicle in nice weather, or off campus."  Dkt. 32-4, ¶ 22.  No one was told or expected, attests Bergsholm, to eat in their car during winter months.

informing him that he was in material breach of the employment agreement under Sections 1.6.14 and 1.10, that his employment was suspended as of October 1, 2021, and that the suspension would be without pay beginning on October 3, 20201 under Section 6.1.  Dkt. 34-3.  The letter further explained that under Section 4.2.2 of the agreement, Romzek would have ten days to cure his breach by either receiving a Covid-19 vaccine or agreeing to the alternative safety protocols.  If Romzek did not take either course of action by October 11, 2021, the letter indicated that his employment would "be terminated pursuant to Section 4.2.2."  *Id.*  This section provides that if the breach is cured within the ten-day timeframe, the employment agreement "shall remain in effect" and "the non-breaching party shall be limited to damages and specific performance as its exclusive remedies."  *Id.* at 11.

Romzek did not vaccinate or agree to comply with the alternative protocols, so Human Resources Director Erin Benson sent him a letter dated October 12, 2021, which gave formal, written notice of his termination.  Dkt. 34-4.  In it, Benson indicated that the "ten (10) days to cure you[r] break as set forth under Section 4.2.2. of the agreement has expired" and that Romzek was being terminated "as required by section 4.2.5 of your employment agreement."  *Id.*  That section defines the bases for "termination for cause," none of which the parties argue are applicable here.  Dkt. 34-1, ¶ 4.2.5.  When Page reviewed the letter from Benson in preparing her declaration, she noticed "an error in that [the letter] states Dr. Romzek's employment was terminated under Section 4.2.5 of the Employment Agreement" and explains that he was "terminated under Section 4.2.2, which is referenced elsewhere in that letter."  Dkt. 34, ¶ 19.  Page attests in her declaration that she "made the decision to terminate Dr. Romzek's employment" and did so "under Section 4.2.2" as her letter to Romzek states.  *Id.*  Benson similarly attests that her statement indicating that Romzek was terminated under Section 4.2.5

10

"is a typo and incorrect," and that Page made the termination decision.  Dkt. 35, ¶ 12.  Romzek

does not dispute that Page made the termination decision.  Dkt. 45, ¶ 74.

Baldwin paid Romzek his normal compensation until October 3, 2021, and also paid

him his owed continuing medical education and vacation time.

ANALYSIS

Baldwin seeks summary judgment on Romzek's entire case, including:  (1) his religious

discrimination and failure to accommodate claims under Title VII, (2) his age discrimination

claim under the ADEA, and 3) his state-law breach-of-contract claim.

Summary judgment is appropriate when there are no genuine disputes of material fact,

and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In determining

whether there are genuine factual disputes, the court examines the record in the light most

favorable to the party opposing judgment and construes all reasonable inferences from the

evidence in his favor.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "[A] factual

dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag*

*Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).  Mere conclusory

allegations do not constitute evidence.  *See Balderston v. Fairbanks Morse Engine Div. of Coltec*

*Indus.*, 328 F.3d 309, 320 (7th Cir. 2003).  Further, disputed facts that are not outcome-

determinative are not material and will not preclude summary judgment.  *Smith ex rel. Smith v.*

*Severn*, 129 F.3d 419, 427 (7th Cir.1997).

The court will conduct this analysis for each of Romzek's claims.

11

## A. Religious discrimination under Title VII

Romzek alleges that Baldwin violated Title VII of the Civil Rights Act of 1964 in two analytically overlapping ways—by failing to explore reasonable accommodations to his religious objection to the Covid-19 vaccine and by firing him rather than reasonably accommodating his objection.  Title VII prohibits employers from discriminating against employees based on their religious beliefs.  42 U.S.C. § 2000e-2(a).  A belief is religious if it is: (1) "religious in the person's own scheme of things" and (2) sincerely held.  *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (internal quotation marks omitted).  Relevant here, Title VII requires employers to provide reasonable accommodations for the religious practices of employees, unless any reasonable accommodation would pose an undue burden on the employer.  *Id.*

To make out a prima facie case of religious discrimination based on the failure to accommodate, Romzek must show that:  (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) that he called the religious observance or practice to his employer's attention; and (3) that the religious observance or practice was the basis for his discharge.  *Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012).  Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to show that any reasonable accommodation would impose an undue burden on defendant.  *Id.* at 951.

### 1.  Prima facie case

The court finds that Romzek has created a dispute of fact as to the prima facie inquiry.  As a threshold matter, Balwin has not questioned the sincerity of Romzek's religious beliefs for the purposes of this motion.  Nor will the court.  *See Burwell v. Hobby Lobby Stores, Inc.*, 573

U.S. 682, 725 (2014) (it is not the court's role to "say that the religious beliefs of the plaintiffs are mistaken or unreasonable.")

Rather, Baldwin questions whether Romzek has raised a religious discrimination claim at all.  Romzek objected to vaccinating against Covid-19 on religious grounds, but unlike those employees who worked for prolonged periods of time with vulnerable patient populations, Baldwin did not require Romzek to get vaccinated to keep his job as a surgeon.  Instead, Balwin determined that Romzek's request could be exempted from the vaccination requirement so long as he complied with the alternative safety protocols.  Romzek objected to the protocols, but he did not object on religious grounds.

Because Romzek lodged only secular objections to the alternative safety protocols, Baldwin urges the court to dismiss the case on this threshold inquiry.  *See Egelkrout v. Aspirus, Inc.,* No. 22-cv-118-bbc, 2022 WL 2833961, at *3 (W.D. Wis. July 20, 2022) (plaintiff who was given an alternative to vaccination that did not conflict with her religious observances had "pled her way out of the first element of her [religious discrimination] claim" under Title VII); *see also Mathisen v. Or. Health & Sci. Univ.,* No. 22-cv-1250-SI, 2023 WL 6147099, at *13 (D. Or. Sept. 20, 2023) (plaintiff's secular objection to masking "does not establish that th[is] offered accommodation to her religious objection [to vaccination] was not reasonable for purposes of her claim of religious discrimination").

Although Baldwin's point has an intuitive appeal, the court must draw all reasonable inferences in Romzek's favor at this stage.  Even though his objections to the alternative protocols were not religious, the only reason the protocols were offered was because he lodged an unquestionably religious objection to the vaccination policy.  Because the parties' conflict

arose from a sincerely held religious objection, the court will not settle this initial inquiry as a matter of law.

### 2. Reasonable accommodation

Romzek does not fare so well on the second part of the test.  Even after examining the record in the light most favorable to Romzek and construing all reasonable inferences from the evidence in his favor, the court finds there is no genuine dispute that Baldwin reasonably accommodated Romzek's religious objection to the Covid-19 vaccination and thus had a basis for terminating his employment.

The reasonable accommodation requirement of Title VII is meant "to assure the individual additional opportunity to observe religious practices, but it [does] not impose a duty on the employer to accommodate at all costs." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)).  This means that a "reasonable accommodation" of an employee's religious practices is "one that 'eliminates the conflict between employment requirements and religious practices.'"  *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir.1993) (quoting *Philbrook*, 479 U.S. at 70).  It need not be the employee's preferred accommodation or the accommodation most beneficial to the employee.  *Philbrook*, 479 U.S. at 69.  But it cannot be punitive.  *See Wright*, 2. F.3d at 217 (suggesting a more "searching inquiry" in the Title VII context if an employee "had to accept a reduction in pay or some other loss of benefits" as an accommodation to his religious practices.).  "Once the employer has offered an alternative that reasonably accommodates the employee's religious needs . . . 'the statutory inquiry is at an end[.]'"  *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1576 (7th Cir. 1997) (citations omitted).

There is no dispute that Baldwin did in fact offer Romzek an alternative to the vaccine: Baldwin told him that he would be exempted from the vaccination requirement so long as he complied with the alternative safety protocols. Romzek objected to these protocols for various reasons and argues that Baldwin did not allow him an opportunity to propose different alternatives. The Seventh Circuit has "recognized that employers must engage in a dialog" with employees seeking exemptions without requiring "hand-holding." *Porter v. City of Chi.*, 700 F.3d 944, 953 (7th Cir. 2012). Romzek believes Baldwin should have been more "interactive" with him, Dkt. 27 at 253:18-254:1, but Baldwin more than met its obligation here in offering Romzek an alternative to vaccination, discussing it over the phone with him in light of his duties and willingness to comply, considering his sole suggestion to test once a week rather than biweekly,[9] and giving him a ten-day suspension period to weigh his options prior to termination.[10] *See Porter*, 700 F.3d at 953 (rejecting argument that the city should have invited an employee to apply for a schedule change and holding that the city discharged its obligation under Title VII by offering an accommodation that would have eliminated the

---

[9] Romzek stated at his deposition that he purposed no other modifications to the protocols out of a sense of futility, Dkt. 27 at 255:4-12, but his testing modification request was not ignored, and he does not testify that he knew future requests would have been. Romzek also cavils at the fact that he was not allowed to prepare responses ahead of his phone call with Bergsholm, but Bergsholm explains without dispute that this was because of the logistical issues that would have been created in fielding written responses given the number of employees she needed to interview. Dkt. 45 at 72:23-74:15; 80:2-20.

[10] Romzek notes that Skinner gave him less than a day to sign the compliance letter or face suspension on September 29, 2021. To the extent Romzek is suggesting he did not have sufficient time to fully consider whether to comply with the protocols, Romzek was already aware of the requirements after speaking about them with Bergsholm on September 20 and receiving a written copy of them on September 23. The ten-day suspension period gave Romzek time to weigh his options. Had he accepted the alternative safety protocols in those ten days, he would have been reinstated rather than terminated.

conflict between the employee's work schedule and her practice of attending church); *see also Rodriguez v. City of Chi.*, 156 F.3d 771, 778 (7th Cir. 1998) (the city did not fail to "open a dialog" with an officer seeking a religious exemption even though a supervisor did not respond to the officer's formal request where the city had engaged in collective bargaining with the officer's union and the officer knew of the agreement to provide transfer options without a loss of pay or benefits).

As for the bases for Romzek's objections to the protocols, they are either unsupported or amount to personal preference. At this stage, more is required. Because this is the heart of Romzek's argument, the court will work through each objection in turn:[11]

First, Romzek objects to the biweekly testing requirement because he worked Monday through Thursday and says he would have to test "every other day while at work," Dkt. 32-1 at 59. But Romzek does not explain why testing twice a week would necessarily mean "every other day" as opposed to Monday and Thursday, for example, or why either schedule would be unreasonable as opposed to inconvenient. While Romzek viewed once-a-week testing as the "norm," Dkt. 27 at 254:18-22, he does not present evidence that other medical centers in the region were requiring less frequent testing for nonvaccinated surgeons. Nor does he rebut Bergsholm's testimony that the biweekly testing protocol is rooted in CDC recommendations, the high level of incidence of Covid-19 in the county at the time, and the concern that false negative tests would place other staff and patients at risk without a second test. As noted above, a reasonable accommodation does not need to "be the employee's preferred

---

[11] As noted, Romzek does not object to the fourth accommodation protocol, requiring symptomatic employees to stay home.

accommodation or the accommodation most beneficial to the employee," *Philbrook*, 479 U.S. at 69.

Second, Romzek objects to masking all the time while inside the medical center as "unnecessary." He also asserts that, as a surgeon, he "understands that wearing a mask 100% of the time is potentially dangerous to the mask wearer because of potential bacterial infection." Dkt. 46 at 9. This assertion falls within the "specialized knowledge" governed by Federal Rule of Evidence 702, which requires qualified experts to render such opinions based on reliable facts and principles. But Romzek did not disclose himself as an expert on infectious diseases. Even though he is a surgeon, there is no evidence in the record that he would be qualified to offer an opinion on whether masking increases rather than decreases the risk of respiratory infection. And even if he could be so qualified, there is no evidence in the record that shows his assertion is based on reliable facts and principles. So, the court disregards Romzek's assertion as unsupported expert opinion. *United States ex rel. Calderon v. Carrington Mortg. Servs., LLC*, 70 F.4th 968, 975 (7th Cir. 2023) (affirming exclusion of plaintiff's unsupported expert opinions). Apart from this assertion, there is no other medical evidence of record that supports Romzek's objections to uninterrupted masking. Without more, Romzek fails to create a genuine dispute as to the reasonableness of Baldwin's masking protocol.

Third, Romzek objects to eating in a separate room as stigmatizing and punitive, but his assertion of how other employees may have perceived him is speculative and he presents no evidence that the designated spaces for nonvaccinated employees to eat were less comfortable than the cafeteria or that Baldwin's suggestion that nonvaccinated employees could also eat outside in nice weather or off campus was illusory. *See Flowers v. Kia Motors Finance*, 105 F.4th 939, 946-47 (7th Cir. 2024) (the court must draw all reasonable inferences

17

in the nonmoving party's favor at summary judgment, but inferences supported only by speculation and conjecture will not defeat the motion). Although he now states that he was unaware that Baldwin had offered nonvaccinated employees a conference room to eat in, that statement is contradicted by his own admission that, before his termination, he knew Baldwin had "designated a conference room for eating." Dkt. 32-1 at 59. As for his contention that he would have had to eat in his car in cold weather, there is no evidence that he was ever told this would be the only viable option, or that it would be in practice. Again, these alternative protocols may have resulted in some inconvenience for Romzek, but that alone does not create a genuine dispute as to their reasonableness. *See Penna v. N. Clackamas Sch. Dist.*, No. 22-cv-01417-YY, 2023 WL 6003834, at *5 (D. Or. Aug. 11, 2023) (policies requiring plaintiff with a religious objection to a Covid-19 vaccination mandate to wear a mask, distance himself from others during lunchtime, and test for Covid-19 do not support a Title VII violation) *report and recommendation adopted as modified*, 2023 WL 6850268 (D. Or. Oct. 17, 2023).

Fourth, and finally, Romzek objects to the protocol requiring vaccination status disclosure based on privacy concerns. He asserts that disclosure "would also violate his privacy, medical privacy, and possibly his rights under the Health Information Portability and Accountability Act." Dkt. 46 at 9-10. But HIPAA excludes information "[i]n employment records held by a covered entity in its role as employer." 45 C.F.R. § 160.103.[12] Romzek does not clarify this point in his opposition brief, so the court deems it waived. *See Shipley v. Chi.*

---

[12] *See also HIPAA, Covid-19 Vaccination, and the Workplace*, U.S. Dep't of Health and Human Serv's, available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-covid-19-vaccination-workplace/index.html (noting that the HIPAA Privacy Rule generally "does not regulate what information can be requested from employees as part of the terms and conditions of employment that an employer may impose on its workforce.").

*Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived").

Regardless of waiver, the record evidence does not support Romzek's version of events. Baldwin ultimately did not require exempted employees to comply with this protocol and never enforced it. To be fair to Romzek: Bergsholm did discuss the fifth disclosure protocol with Romzek during his phone interview, and the disclosure protocol was included in the compliance letter Romzek received from Skinner on September 29, 2021. But that same day, Skinner made clear to Romzek via email that only the first four protocols would be required at that time, and the exemption committee formally declined to adopt the fifth protocol before Romzek began his 10-day suspension on October 1. Romzek insists that he did not understand that the protocol was not required, and the court credits that belief, but Romzek's subjective belief on this point does not undermine the objective facts.

Relatedly, Romzek contends that Baldwin asked him to "assent to oppressive and punitive accommodation beyond that expected of other employees." Dkt. 46 at 2. This assertion appears to be based on language in the written copy of the protocols stating that vaccination status would be available on patient consent forms. *See* Dkt. 33-1; Dkt. 33-3. Romzek specifies no evidence that this was "tailored specifically" to him, as he asserts in his opposition brief. Dkt. 46 at 4. Indeed, the compliance letter from Skinner that he relies on has all the hallmarks of a form letter—it is addressed to "Dear" without a name and begins by stating that the unspecified addressee's "request for a medical/religious waiver…has been granted." Dkt. 33-3. This is not evidence that Romzek was singled out for harsher treatment, and he will not proceed to trial on this challenge to a protocol that was never imposed.

19

At bottom, Romzek has not created a genuine dispute of material fact as to whether Baldwin met its lawful duty to propose reasonable accommodations.  The court therefore GRANTS summary judgment in Baldwin's favor on Romzek's Title VII claims.[13]

## B.  Age discrimination under the ADEA

Romzek also alleges that he was subjected to age-based employment discrimination. The ADEA prohibits employers from discriminating against an employee "because of" the employee's age where, as here, the employee is older than 40.  29 U.S.C. § 623(a)(1).  This requires Romzek to prove that the discrimination would not have occurred but for his age. *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 603-04 (7th Cir. 2012)*; Martino v. MCI Communications Services, Inc.*, 574 F.3d 447, 455 (7th Cir. 2009).  Under that standard, it is not enough to show that the employer's decision was the result of mixed motives, and that discrimination was merely one of the motivating factors.  *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019) (to establish disparate treatment in the ADEA context, it is not enough to show that age was a motivating factor).

Romzek has no evidence of comments on his age or documents that reference his age. He contends that he can prove his claim under the indirect method and burden-shifting approach set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See* Dkt. 46 at 12-

---

[13] Since briefing on Baldwin's motion for summary judgment was complete, the Seventh Circuit Court of Appeals has issued two decisions concerning Covid-19 vaccination requirements in the workplace.  The court has reviewed those decisions and finds them distinguishable.  In *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1007 (7th Cir. 2024) and *Bube v. Aspirus Hospital, Inc.*, 108 F.4th 1017, 1018 (7th Cir. 2024), the appellate court considered, at the motion to dismiss stage, whether an employee's request was sufficiently religious in nature to fall within Title VII's ambit and concluded that if the request was plausibly based at least in part on some aspect of their religious belief or practice, it was.  Whether Romzek's beliefs are religious in nature, and whether he sought an exemption from the vaccine requirement based on his sincerely held religious beliefs, is not at issue in this case.

13 (*citing McDonnell Douglas*, 411 U.S. at 793)).  To do so, Romzek would need to make a prima facie showing that he was (1) terminated from a position that (2) he was qualified for and (3) similarly-situated employees who did not share his protected characteristics were treated more favorably.  *Barricks*, 481 F.3d at 559.  If Romzek makes this showing, the burden shifts to Baldwin to provide a legitimate, non-discriminatory reason for its action; and if Baldwin makes that showing, the burden shifts again to Romzek to show that the reason was pretext for discrimination.  Although the *McDonnell Douglas* framework can be an efficient way for a plaintiff to present and for the court to assess evidence in a discrimination case, *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018), the Seventh Circuit has encouraged district courts to focus on the central question, which in this case is whether a reasonable jury could find that Baldwin treated Romzek adversely because of his age.  *Lewis v. Indiana Wesleyan University*, 36 F.4th 755, 760 (7th Cir. 2022); *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504-05 (7th Cir. 2017).

Romzek's evidence in support of his ADEA claim falls short at the summary judgment stage.  As a threshold matter, Romzek's argument that "his age and religion was a factor in Defendant's eagerness to terminate him," Dkt. 46 at 11, undercuts a finding that age was the *but-for* cause of termination.  *See McDaniel*, 940 F.3d at 367 (it is not enough to show that age was a motivating factor).  Regardless, there is no dispute that Romzek was over forty, was qualified for his position as a surgeon, and was terminated.  But beyond hearing "through the grapevine" that Baldwin had hired another surgeon "in his 30s" and observing the appearance of a nameplate around the same time he sought an exemption from the vaccination policy, Dkt. 26 at 153:2-20; 155:1-4, Romzek presents no evidence of who or how old the surgeon is, or in what capacity the surgeon was hired and the procedures he performs.  Without such

evidence, a reasonable trier of fact could not link the surgeon's hiring to an effort to replace Romzek based on age or any other reason as opposed to an to effort to supplement the services Romzek already provided as he had previously discussed with Baldwin.

While Romzek's allegations may be enough to state a claim, summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). Romzek's speculation about Baldwin's motives in hiring a younger surgeon is insufficient to create a genuine dispute of material fact for a jury to resolve. *Flowers*, 105 F.4th at 946-47 (speculation and conjecture do not defeat summary judgment). Accordingly, the court GRANTS summary judgment in favor of Baldwin on this claim.

## C. Breach-of-contract under Wisconsin law

Finally, Romzek argues that Baldwin breached the employment agreement in violation of Wisconsin state law. Dkt. 5, ¶¶ 77-91; Dkt. 46 at 13-14. A claim for breach of contract has three elements: (1) a contract between the parties that creates obligations from the defendant to the plaintiff; (2) the defendant's failure to fulfill those obligations; and (3) damages flowing from the breach. *Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582.

Romzek's breach of contract claim goes as follows: Under Section 4.2.4 of the agreement, Baldwin could terminate Romzek "for any or no reason," so long as Baldwin paid Romzek his prorated salary for the full notice period, totaling 180 days. Dkt. 5, ¶ 92. According to Romzek, Baldwin breached that contractual term when it provided him notice of termination on October 1, 2021 and then paid him his prorated salary until only October 3,

2021.  The problem with Romzek's argument is that Baldwin did not terminate him under Section 4.2.4, which allowed for termination "for any or no reason."  Dkt. 34-1, ¶ 4.2.4. Rather, Baldwin terminated him under Section 4.2.2, which allowed for termination "[i]n the evident of a material breach[,]" so long as Baldwin provided Romzek written notice of the breach and "a reasonable opportunity to cure the breach, not to exceed ten (10) days." *Id.*

There is no dispute that Baldwin followed the procedure of Section 4.2.2.  It provided Romzek notice of his material breach (identified as Romzek's failure to comply with either the vaccination policy or the alternative safety protocols) and gave him the maximum ten days to cure.  When Romzek did not cure, under Section 4.2.2, Baldwin was entitled to "terminate th[e a]greement at any time." Dkt. 34-1, ¶ 4.2.2.  Baldwin ultimately finalized the termination on October 12, 2024.

Despite all this, Romzek insists Section 4.2.4 should apply because, according to Romzek, he was never in material breach because the vaccination policy never became part of the agreement.  Romzek's argument is skeletal at best, and the court has no obligation to flesh it out for him.  *Shipley*, 947 F.3d at 1063.  But even giving Romzek the benefit of the argument, it is not supported by the record.  The agreement expressly states that failing to comply with Baldwin's "policies, procedures, directives and orders" is a material breach.  Dkt. 34-1, ¶ 1.6. Romzek acknowledged the vaccination policy was one such directive when he signed the exemption request form.  That form expressly stated that failure to comply with "all alternative infection control requirements imposed as a condition of exemption" could result in termination.  Dkt. 45-3.

Romzek asserts that amendments to the agreement needed to be in writing and executed by the parties, Dkt. 5, ¶ 81, but the vaccination policy was not an amendment to the agreement,

it was simply a policy.  Romzek's conflation of these points does not create a dispute as to any material fact that would prevent summary judgment on this claim.  Romzek also argues that whether an employee handbook and posted company policy became part of the employment contract depends on the parties' intent that thus precludes summary judgment.  He cites *Clay v. Horton Mfg. Co.*, 172 Wis. 2d 349, 354, 493 N.W.2d 379, 381 (Ct. App. 1992) for the proposition, but that case is readily distinguishable because it involved allegations of wrongful termination of at-will employment in violation of the company's layoff policy.  There, the Court of Appeals of Wisconsin found a dispute of fact as to whether the parties had agreed to the layoff policy as a term of employment, including because the policy was in a handbook that expressly disclaimed that its contents formed any contract.  *Id.*  Here, there is no dispute that Romzek agreed to comply with Baldwin's "policies, procedures, directives and orders" and that the vaccination policy fell within that category.[14]

Rozmek tries to muddy the waters by pointing to a typo in his termination letter.  That letter, sent from HR Director Benson, references Section 4.2.5, not Section 4.2.2, but there is no evidence that this was anything more than scrivener's error.  Section 4.2.5 sets forth a procedure for Baldwin to terminate Romzek immediately for cause, which inarguably was not invoked.  Page attests in her declaration that she "made the decision to terminate Dr. Romzek's employment" and did so "under Section 4.2.2."  The notice letter that she sent to Romzek

---

[14] Both the Seventh Circuit and the Court of Appeals of Wisconsin have distinguished *Clay* and affirmed summary judgment on breach of contract claims along these same lines.  *E.g., Gilsinger v. Cities & Villages Mut. Ins. Co.*, No. 23-2963, 2024 WL 3738886, at *7 (7th Cir. Aug. 9, 2024); *Tremlett v. Aurora Health Care, Inc.*, 2002 WI App 221, ¶ 18, 257 Wis. 2d 621, 650 N.W.2d 559; *Tasker v. Chieftain Wildrice Co.*, 2003 WI App 89, ¶ 12, 263 Wis. 2d 432, 662 N.W.2d 679.

cited Section 4.2.2.  Dkt. 34, ¶ 19.  Even construing the evidence in the light most favorable to Romzek, there is no dispute Baldwin terminated him under Section 4.2.2.

Ultimately, Romzek bears the burden of proving his breach of contract claim.  At this stage, he must present facts that create a dispute of material fact as to each element.  For the reasons above, the court finds Romzek has failed to do so on both the second and third elements; namely, he failed to create a dispute as to whether Baldwin breached the agreement or that he was damaged by any breach.  Accordingly, the court GRANTS summary judgment in defendant's favor on this claim as well.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment, Dkt. 31, is GRANTED.

2. Defendant's request for attorney's fees, Dkt. 51 at 2, is DENIED.

3. The telephonic status conference scheduled for September 18, 2024, at 3:00 p.m. is CANCELLED.

4. The clerk of court is directed to enter judgment in defendant's favor and to close this case.

Entered this 17th day of September, 2024.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge

25